1  ANDRÉ BIROTTE JR.
   United States Attorney
2  DENNISE D. WILLETT
   Assistant United States Attorney
3  Chief, Santa Ana Branch Office
   ANN LUOTTO WOLF (Cal. State Bar No. 137163)
4  AMANDA N. LISKAMM (Cal. State Bar No. Pending)
   Assistant United States Attorneys
5       United States Courthouse
        411 West Fourth Street, Suite 8000
6       Santa Ana, California  92701
        Telephone:  (714) 338-3533/3547
7       Facsimile:  (714) 338-3561/3708
        Email:      ann.wolf@usdoj.gov
8                   amanda.liskamm@usdoj.gov

9  Attorneys for Plaintiff
   United States of America

10

11              UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                   SOUTHERN DIVISION

14  UNITED STATES OF AMERICA,  ) SA CR 10-145-DOC
                               )
15          Plaintiff,         ) GOVERNMENT'S TRIAL MEMORANDUM
                               )
16          v.                 )
                               )
17  KARON DOMINIQUE BOWSER,    ) Trial Date:   April 12, 2011
                               ) Trial Time:   8:30 a.m.
18          Defendant.         )
                               )
19  _____)

20

21       Plaintiff United States of America, by and through its

22  counsel of record, the United States Attorney for the Central

23  District of California, hereby submits its trial memorandum.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

TABLE OF CONTENTS

PAGE

I.   STATUS OF THE CASE . . . . . . . . . . . . . . . . . . 1

II.  THE INDICTMENT . . . . . . . . . . . . . . . . . . . . 1

III. SUMMARY OF FACTS . . . . . . . . . . . . . . . . . . . 3

     A.   The Robbery . . . . . . . . . . . . . . . . . . 3

     B.   The Informant . . . . . . . . . . . . . . . . . 5

     C.   Co-Conspirator Sheryl Alexander . . . . . . . . 5

IV.  EVIDENTIARY ISSUES . . . . . . . . . . . . . . . . . . 7

     A.   Expert Testimony . . . . . . . . . . . . . . . .7

     B.   Lay Opinion Testimony on Use of a Real Handgun . . . .8

     C.   Co-Conspirator Statements . . . . . . . . . . . 9

     D.   Admissibility of Co-Conspirator Alexander's False
          Exculpatory Statements . . . . . . . . . . . . 12

     E.   Identification of Defendant . . . . . . . . . .12

     F.   Summary Evidence . . . . . . . . . . . . . . . 13

     G.   Character Witnesses . . . . . . . . . . . . . . 14

     H.   Reciprocal Discovery . . . . . . . . . . . . . 14

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . .15

# I.

## STATUS OF THE CASE

A.    Trial is set for April 12, 2011, at 8:30 a.m. before the Honorable David O. Carter, United States District Judge.

B.    Estimated time for trial is five to six days.

C.    Defendant is in custody.

D.    Trial by jury has not been waived.

E.    No interpreter will be required.

F.    The government has proposed three fact stipulations regarding federal insurance status, loss amount, and surveillance video and still photograph admissibility, to which defendant has agreed.  Assuming execution of the stipulations, the government anticipates calling between 15 and 18 witnesses during its case-in-chief.

# II.

## THE INDICTMENT

Defendant is charged in a three count Indictment, a copy of which is attached to this trial memorandum.  Count One charges defendant with conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371.  In order for defendant to be found guilty of Count One, the government must prove the following elements: (1) beginning on or about June 2006, and ending on or about January 30, 2007, there was an agreement between two or more persons to commit at least one crime as charged in the indictment; (2) the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out

the conspiracy, with the jury agreeing on a particular overt act that it finds was committed.

In order for defendant to be found guilty of Count Two, the government must prove the following elements: (1) the defendant took money belonging to the Credit Union of Southern California; (2) the defendant used force and violence, or intimidation in doing so; (3) the deposits of the Credit Union of Southern California were then insured by the National Credit Union Administration Board; and (4) the defendant intentionally made a display of force that reasonably caused victim credit union employees and customers to fear bodily harm by using a handgun. The Indictment also alleges that during the course of the bank robbery, defendant forced employees and customers of the credit union to accompany him from the lobby and teller areas of the bank to the women's restroom in the back of the bank without the employees' and customers' consent. "[T}he enhancing elements [of 18 U.S.C. § 2113, subsection (e)] are that a defendant (1) in the course of committing a bank robbery (2) forces a person (3) to accompany him (4) without that person's consent." United States v. Strobehn, 421 F.3d 1017, 1019 (9th Cir. 2005).

In order for defendant to be found guilty of Count Three, the government must prove the following elements: (1) the defendant committed the crime of armed bank robbery as charged in Count Two of the Indictment, which is a crime of violence; and (2) the defendant knowingly used and/or brandished a firearm during and in relation to that crime, with the jury agreeing that the defendant used the firearm and/or that the defendant brandished the firearm. The Supreme Court has construed the term

"use" to require proof that "the defendant actively employed the firearm during and in relation to the predicate crime." Bailey v. United States, 516 U.S. 137, 150 (1995).  Active employment includes brandishing, displaying, bartering, or striking with a firearm.  Id. at 148.  "[T]he term 'brandish' means, with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person."  18 U.S.C. § 924(c)(4).

### III.

### SUMMARY OF FACTS

A.   The Robbery

On January 5, 2007, at about 6:11 p.m., Barbara Wehrly, the branch manager of the Credit Union of Southern California in Brea (the "credit union" or "bank"), opened the inner and then outer doors of the credit union to let out two of three remaining customers, Andrew and Becky Vickers.  Defendant, brandishing a semi-automatic handgun, came running from behind a dumpster up to the three of them, grabbed Becky Vickers by the neck and spun her around -- breaking her necklace -- and pushed both Vickers back inside the outer door of the bank.  Defendant ordered Wehrly to open the inner door of the bank, which she did.

Once inside the credit union, defendant yelled, "This is a robbery!" and ordered everyone to put their hands up.  He told the two tellers (Kelly McFarland and Sheryl Alexander), who were behind plexiglass bandit barriers, "You have five seconds to come out or I will shoot somebody," and he started counting from five

1  to one.  McFarland and Alexander left their teller stations and
2  joined the others in the lobby.

3      Defendant directed the hostages to a door that led to the
4  back of the credit union.  Once in the back portion of the bank,
5  he asked where the bathrooms were and ushered everyone into the
6  women's bathroom.  After all the hostages were in the bathroom,
7  defendant told them to take off their jackets and hand them to
8  him, together with the women's purses, which he threw on the
9  ground outside of the restroom.  Then, one at a time, calling
10 each hostage by describing his/her clothing, defendant conducted
11 pat-down searches of all hostages – except Alexander; he also
12 asked for and took all cell phones – except Alexander's.

13     Defendant removed duct tape, rope, and two pairs of
14 handcuffs from his backpack.  He gave one pair of handcuffs to
15 McFarland and ordered her to put them on Andrew Vickers, which
16 she did.  He told Alexander to put the other pair on someone
17 else, and Alexander put the handcuffs on Barbara Wehrley.
18 Defendant gave Alexander the duct tape and told her to tape
19 everyone else's hands behind their backs, which she did.  He then
20 ordered everyone to get down on the floor and told Alexander to
21 tape the hostages' legs together, which she did.

22     Defendant told McFarland and Alexander to come with him, and
23 the three of them went out to the teller area.  Defendant had
24 McFarland and Alexander empty the money in their teller drawers,
25 the vault, and the ATM canisters into his backpack.  After
26 emptying the ATM canisters, defendant asked where the closest
27 door was and then told McFarland and Alexander to "go back to the
28 bathroom and stay there until tomorrow morning when the cops come

4

1  or I'll kill you and your families."  At approximately 6:20 p.m.,

2  defendant fled out the side door of the credit union with

3  approximately $158,924.

4  B.    The Informant

5       On May 9, 2007, following his arrest by the El Monte Police

6  Department ("El Monte PD") for stealing a neighbor's toolbox,

7  Cornell Tyleiz Harvey told police officers that he knew about

8  "somebody who robbed a bank."  El Monte PD contacted the Federal

9  Bureau of Investigation (the "FBI").

10      Harvey informed agents of the FBI that defendant and

11  Alexander, who were dating at the time, planned the robbery.

12  Sometime after Harvey got out of jail in August 2006, defendant

13  approached Harvey to help with/participate in the robbery.

14  Harvey did not participate in the actual robbery, although he

15  "heard [defendant] out" and supplied defendant with many of the

16  items defendant used during the robbery, including the handgun.

17  Defendant's initial plan was to cut Alexander out by telling her

18  before the robbery that they would split the money three ways,

19  which included an unnamed third man, i.e., Harvey, and, after the

20  robbery, telling Alexander that the third man took off with her

21  share of the money.  However, defendant ended up doing the

22  robbery on his own without Harvey.

23  C.    Co-Conspirator Sheryl Alexander

24      On October 4, 2007, two FBI agents interviewed Alexander at

25  the credit union.  They asked her if she called anyone after the

26  robbery, and she replied that she only called her brother so he

27  could follow her home.  The agents asked if she made any more

28  phone calls that night, to family or friends to advise them of

5

1  what had happened, or any other calls at all, and Alexander
2  stated that she only called her brother.

3      Alexander was asked if she recognized the robber, and she
4  said no.  She was asked if the robber's voice was familiar, and
5  she said it was not.  Alexander was shown a photo line-up that
6  included defendant's picture, and she denied recognizing any of
7  the individuals.

8      The agents again questioned Alexander if she was sure that
9  she only called her brother the night of the robbery, to which
10 Alexander replied, "Yes."  The agents then presented Alexander
11 with phone records, which indicated phone calls and texts to and
12 from defendant's cell phone number.  Alexander then said she knew
13 defendant because he took out an auto loan at the bank and she
14 handled his account.  The loan was taken out sometime before the
15 robbery and she had last seen him sometime before the robbery.
16 Other than stating that defendant was a customer, Alexander would
17 not explain the frequency of phone calls to defendant from her
18 cell phone.

19     Following her indictment, Alexander entered into a
20 cooperation plea agreement and admitted, among other things,
21 that, at the time of the robbery, she was romantically involved
22 with defendant, that the two of them together planned the
23 robbery, that defendant committed the robbery of the credit union
24 on January 5, 2007, and that she received $20,000 of the robbery
25 proceeds.
26 / / /
27 / / /
28 / / /

1

**IV.**

2

**EVIDENTIARY ISSUES**

3   A.   Expert Testimony

4        Although the government does not believe that all of their

5   testimony qualifies as "expert testimony," out of an abundance of

6   caution the government has noticed seven potential expert

7   witnesses.  If specialized knowledge will assist the trier of

8   fact in understanding the evidence or determining a fact in

9   issue, a qualified expert witness may provide opinion testimony

10  on the issue in question.  See Fed. R. Evid. 702.  An expert may

11  provide opinion testimony even if it embraces an ultimate issue

12  to be decided by the trier of fact.  See Fed. R. Evid 704; United

13  States v. Fleishman, 684 F.2d 1329, 1335 (9th Cir. 1982).  To be

14  admissible, expert testimony must satisfy only two basic

15  requirements: (1) the testimony must be helpful to the trier of

16  fact; and (2) the witness must be qualified to deliver the

17  testimony based on his knowledge, skill, experience, training, or

18  education.  Exum v. General Elec. Co., 819 F.2d 1158, 1163 (D.C.

19  Cir. 1987); 4 Weinstein & Berger, WEINSTEIN'S FEDERAL EVIDENCE,

20  § 702.06[2], at p. 702-36 (2d ed. 1997) ("WEINSTEIN").  In this

21  context, "helpful" means "relevant."  See WEINSTEIN, § 702.03[14]

22  at p. 702-13 ("The helpfulness test requires an ordinary

23  relevance analysis").

24       Although the government need not prove that the gun used

25  during the robbery was operable, United States v. Harris, 792

26  F.2d 866, 868 (9th Cir. 1986), to obtain a conviction under

27  Section 924(c), the government must prove that the firearm was

28  real and not a toy or replica.  United States v. Westerdahl, 945

7

F.2d 1083, 1088 (9th Cir. 1991).  Special Agent Ludger A. Parent
with the Bureau of Alcohol, Tobacco, Firearms and Explosives, a
firearms expert, will opine that, based on the surveillance
videos and crime scene photos of the robbery and victim
interviews, the firearm used to commit the robbery was a real
handgun, not a toy or replica.  In a similar vein, FBI Special
Agent John H. McEachern, who has investigated over 1,000 bank
robberies, will testify that he has never heard of a takeover-
style bank robbery, like the one in this case, accomplished using
a fake or replica gun.

     As discussed below in section (F), FBI Special Agent Steven
T. Budman, who is a certified public accountant, will summarize
financial records of defendant during the years 2005 to the
present.

     Rachel Minick, Ruth H. Ikeda, Pamela Pusztai, and Donald J.
Petka, who are employed by the Orange County Sheriff-Coroner
Department, Forensic Science Services Division, will testify
regarding forensic examinations that they conducted on evidence
collected from the crime scene.

B.   Lay Opinion Testimony on Use of a Real Handgun

     "Federal Rule of Evidence 701 allows a lay witness to give
opinion testimony provided it is '(a) rationally based on the
perception of the witness, (b) helpful to a clear understanding
of [the witness's] testimony or the determination of a fact in
issue, and (c) not based on scientific, technical, or other
specialized knowledge within the scope of Rule 702.'"  United
States v. Durham, 464 F.3d 976, 982 (9th Cir. 2006).  "Given the
Rule's first two limitations, opinion testimony of lay witnesses

8

must be 'predicated upon concrete facts within their own observation and recollection–that is facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts.'"  Id., citing United States v. Skeet, 665 F.2d 983, 985 (9th Cir. 1982).  Non-expert witness testimony may be used to establish that a defendant was using a "firearm" for purposes of sustaining a conviction under Section 924(c).  United States v. Roberson, 459 F.3d 39, 47 (1st Cir. 2006) (testimony of lay witness familiar with handguns sufficient to prove gun was real); United States v. Hunt, 187 F.3d 1269, 1270-71 (11th Cir. 1999) ("lay opinion is sufficient to establish that a device is a firearm" for purposes of sustaining a conviction under § 924(c)); United States v. Harris, 792 F.2d 866, 867-68 (9th Cir. 1986) (testimony of bank customer familiar with guns sufficient to sustain conviction under § 924(c)).

C.   Co-Conspirator Statements

Under Federal Rule of Evidence 801(d)(2)(E), a statement is admissible for the truth of the matter asserted and is not hearsay if it is "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."  See Bourjaily v. United States, 483 U.S. 171, 175-76 (1987).  For a statement to be admissible under Rule 801(d)(2)(E), the offering party must establish that: (1) the statement was in furtherance of the conspiracy; (2) it was made during the life of the conspiracy; and (3) the defendant and declarant were members of the conspiracy.  See id. at 176; United States v. Smith, 893 F.2d 1573, 1578 (9th Cir. 1990).  The offering party has the burden of proving these foundational facts by a preponderance of the

1  evidence.  See Bourjaily, 483 U.S. at 176; United States v.

2  Schmit, 881 F.2d 608, 610 (9th Cir. 1989); United States v.

3  Gordon, 844 F.2d 1397, 1402 (9th Cir. 1988).  Whether the

4  offering party has met its burden is to be determined by the

5  trial judge, and not the jury.  See United States v. Zavala-

6  Serra, 853 F.2d 1512, 1514 (9th Cir. 1988).

7       The term "in furtherance of the conspiracy" is construed

8  broadly to include statements made to: (1) induce enlistment or

9  further participation in the group's activities; (2) prompt

10 further action on the part of conspirators; (3) reassure members

11 of a conspiracy's continued existence; (4) allay a co-

12 conspirator's fears; and (5) keep co-conspirators abreast of an

13 ongoing conspiracy's activities.  See United States v. Yarbrough,

14 852 F.2d 1522, 1535-1536 (9th Cir. 1988) (citing cases).  It is

15 not necessary that the defendant have been present at the time

16 the statement was made.  See Sendejas v. United States, 428 F.2d

17 1040, 1045 (9th Cir. 1970).

18      The declaration itself, together with independent

19 evidence, may constitute sufficient proof of the existence of the

20 conspiracy and the involvement of the defendant and declarant in

21 it.  See Bourjaily, 483 U.S. at 181; Zavala-Serra, 853 F.2d at

22 1515.

23      The foundation for the admission of a co-conspirator

24 statement may be established before or after the admission of the

25 statement.  If a proper foundation has not yet been laid, the

26 court may nevertheless admit the statement, but with an

27 admonition that the testimony will be stricken should the

28 conspiracy not be proved.  See United States v. Arbelaez, 719

1  F.2d 1453, 1469 (9th Cir. 1983); <u>United States v. Kenny</u>, 645 F.2d
2  1323, 1333-1334 (9th Cir. 1981).

3      Co-conspirator statements fall within a "firmly rooted
4  hearsay exception."  Therefore, if a statement is properly
5  admissible under Rule 801(d)(2)(E), no additional showing of
6  reliability is necessary to satisfy the requirements of the
7  Confrontation Clause.  <u>See</u> <u>Bourjaily</u>, 483 U.S. at 183-184;
8  <u>Yarbrough</u>, 852 F.2d at 1536; <u>United States v. Knigge</u>, 832 F.2d
9  1100, 1107 (9th Cir. 1987), <u>amended</u>, 846 F.2d 591 (9th Cir.
10  1988).

11      Statements made in the course of and in furtherance of the
12  conspiracy are not "testimonial," and therefore are not
13  excludable under the Sixth Amendment's Confrontation Clause as
14  interpreted in <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).
15  <u>Accord</u> <u>United States v. Allen</u>, 425 F.3d 1231, 1235 (9th Cir.
16  2005) (quoting <u>Crawford</u>).

17      Co-conspirator statements are admissible in their entirety
18  under Federal Rule of Evidence 801(d)(2)(E).  Rule 801(d)(2)(E)
19  applies to any conspiracy that the government can establish -- it
20  need not be a conspiracy charged in the indictment.  <u>See</u> <u>United</u>
21  <u>States v. Manning</u>, 56 F.3d 1188, 1197 (9th Cir. 1995) ("A
22  coconspirator's statement is admissible upon proof that it was
23  made in furtherance of a conspiracy, notwithstanding the fact
24  that the indictment does not contain a conspiracy count.  The
25  question is merely whether there was proof of a sufficient
26  concert of action to show the individuals to have been engaged in
27  a joint venture.") (citation omitted).  Whether the objective of
28  the conspiracy is illegal or not is irrelevant -- what matters is

11

whether the individuals are engaged in a joint venture.  <u>See,</u>
<u>e.g.</u>, <u>United States v. Peralta</u>, 941 F.2d 1003, 1007 (9th Cir.
1991) (Under Rule 801(d)(2)(E), "it makes no difference whether
the declarant or any other 'partner in crime' could actually be
tried, convicted and punished for the crime of conspiracy[.]")
(citation omitted).  As noted above, if a statement qualifies
under Rule 801(d)(2)(E), then no Confrontation Clause problems
arise.  See <u>Bourjaily</u>, 483 U.S. 182-84; <u>United States v.</u>
<u>Arambula-Ruiz</u>, 987 F.2d 599, 607 (9th Cir. 1993) ("[W]hen the
requirements of Rule 801(d)(2)(E) are satisfied, there is no
independent violation of the Confrontation Clause.").

D.   <u>Admissibility of Co-Conspirator Alexander's False</u>
     <u>Exculpatory Statements</u>

     Alexander's false exculpatory statements are not admitted
for the truth of the matter asserted, but as circumstantial
non-hearsay evidence of Alexander's consciousness of guilt of her
participation in the conspiracy, and, therefore, they tend to
establish the existence of the conspiracy.  Thus, the statements
are relevant and admissible against defendant.  <u>See</u> <u>Tennessee v.</u>
<u>Street</u>, 471 U.S. 409, 414 (1985); <u>United States v. Hackett</u>, 638
F.2d 1179, 1187 (9th Cir. 1980).

E.   <u>Identification of Defendant</u>

     The government anticipates calling witnesses to identify the
defendant.  The prosecution is entitled to produce any evidence
tending to establish a defendant's identity.  <u>Thomas v. United</u>
<u>States</u>, 343 F.2d 49, 53 (9th Cir. 1965); <u>Stovall v. Denno</u>, 355
F.2d 731, 736-37 (2d Cir. 1966), <u>aff'd</u>, 388 U.S. 293 (1967).  A
prior identification outside the courtroom is admissible not only

to corroborate an identification made at trial, but also as independent evidence of identity.  Under Federal Rule of Evidence 801(d)(1)(C), the testimony of a declarant testifying at trial and subject to cross-examination as to a prior identification of a person after perceiving him or her is not hearsay, even if the prior identification is equivocal.  <u>United States v. Hudson</u>, 564 F.2d 1377, 1379 (9th Cir. 1977); <u>United States v. Cueto</u>, 611 F.2d 1056, 1063 (5th Cir. 1980); Fed. R. Evid. 801(d)(1)(C).  The fact that an identification in court is less than positive does not render it inadmissible.  <u>United States v. Malatesta</u>, 583 F.2d 748 (5th Cir. 1978); <u>Frank v. Blackburn</u>, 605 F.2d 910 (5th Cir. 1979), <u>rev'd on other grounds</u>, 646 F.2d 873 (5th Cir. 1980).

F.   <u>Summary Evidence</u>

As mentioned above, FBI Special Agent Steven T. Budman will offer summary testimony of defendant's financial records.  In addition, FBI Special Agent Christopher Gicking will summarize various telephone records.  The use of summary testimony and documents is governed by Rule 1006 of the Federal Rules of Evidence.  It provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation.  The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at [a] reasonable time and place. The court may order that they be produced in court.

The court and jury are entitled to have a witness "organize and evaluate evidence which is factually complex and fragmentally

13

1   revealed." <u>United States v. Shirley</u>, 884 F.2d 1130, 1133-34 (9th

2   Cir. 1989); <u>United States v. Lemire</u>, 720 F.2d 1327, 1348 (D.C.

3   Cir. 1983); <u>United States v. Gardner</u>, 611 F.2d 770, 776 (9th

4   Cir.1980) (holding that admission of chart summarizing the

5   defendant's financial status was well within the discretion of

6   the trial court).

7   G.   <u>Character Witnesses</u>

8        As a general rule, character witnesses called by the

9   defendant may not testify about specific acts demonstrating a

10  particular trait or other information acquired only by personal

11  observation and interaction with the defendant; the witness must

12  summarize the reputation or opinion of the defendant as known in

13  the community.  <u>Michelson v. United States</u>, 335 U.S. 469 (1948);

14  <u>United States v. Hedcorth</u>, 873 F.2d 1307, 1313 (9th Cir. 1989).

15  If defendant presents any such witnesses, on cross-examination,

16  the government may inquire into specific instances of defendant's

17  past conduct relevant to the character trait at issue.  Fed. R.

18  Evid. 405(a); <u>Michelson</u>, 335 U.S. at 482-87.  The only

19  prerequisite to such inquiries into specific instances of conduct

20  is that there be a good faith basis that the incidents inquired

21  about be relevant to the character trait at issue.  <u>United States</u>

22  <u>v. McCollom</u>, 664 F.2d 56, 58 (5th Cir. 1981).

23  H.   <u>Reciprocal Discovery</u>

24       The government requested all reciprocal discovery from

25  defendant on August 16 and October 13, 2010 and January 6, 2011.

26  However, to date, the government has not received any discovery.

27  To the extent defendant may attempt to introduce or use any

28  documents or tangible evidence at trial that he has not produced,

14

1  the government reserves the right to object and to seek to have

2  such evidence precluded.

3                                    **V.**

4                               **CONCLUSION**

5        The government requests leave to file such additional

6  memoranda as may become appropriate during the course of the

7  trial.

8  DATED:  April 5, 2011          Respectfully submitted,

9                                 ANDRÉ BIROTTE JR.
                                  United States Attorney
10
                                  DENNISE D. WILLETT
11                                Assistant United States Attorney
                                  Chief, Santa Ana Branch Office
12

13                                _____/s/_____
                                  ANN LUOTTO WOLF
14                                AMANDA N. LISKAMM
                                  Assistant United States Attorneys
15
                                  Attorneys for Plaintiff
16                                United States of America

17

18

19

20

21

22

23

24

25

26

27

28

                                   15

2010 JUL 21  PM 12: 44

FILED

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

September 2009 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>KARON DOMINIQUE BOWSER and<br>SHERYL ANNTOINETTE ALEXANDER,<br><br>            Defendants. | No. SA CR 10- **SA CR 10-0145**<br><br>**I N D I C T M E N T**<br><br>[18 U.S.C. § 371: Conspiracy;<br>18 U.S.C. § 2113(a),(d),(e):<br>Armed Bank Robbery with Forced<br>Accompaniment; 18 U.S.C.<br>§ 924(c)(1)(A)(ii): Using,<br>Carrying, Brandishing Firearm in<br>Commission of Crime of Violence;<br>18 U.S.C. § 2: Aiding and<br>Abetting] |

        The Grand Jury charges:

                      COUNT ONE

                  [18 U.S.C. § 371]

A.    THE OBJECTS OF THE CONSPIRACY

        1.    Beginning on or about June 2006, and continuing to on
or about January 30, 2007, in Orange County, within the Central
District of California, defendants KARON DOMINIQUE BOWSER and
SHERYL ANNTOINETTE ALEXANDER, and others known and unknown to the
Grand Jury, knowingly combined, conspired, and agreed to commit

1 offenses against the United States, namely, armed bank robbery,
2 in violation of Title 18, United States Code, Sections 2113(a)
3 and (d).
4 B.   THE MANNER AND MEANS OF THE CONSPIRACY
5   2.   The object of the conspiracy was to be accomplished, in
6 substance, as follows:
7       a.   Defendant ALEXANDER, who worked as a teller at the
8 Credit Union of Southern California in Brea, California (the
9 "Bank"), gave defendant BOWSER insider information about the
10 Bank.
11      b.   In the months preceding the robbery, defendants
12 ALEXANDER and BOWSER, together with other conspirators known and
13 unknown to the Grand Jury, planned the robbery.
14      c.   Approximately one week before the robbery,
15 defendant ALEXANDER ordered extra cash so that, the day of the
16 robbery, the Bank had more money than usual in its inventory.
17      d.   After the commission of the robbery, defendants
18 ALEXANDER and BOWSER were to split the proceeds obtained from the
19 robbery of the Bank.
20 C.   OVERT ACTS
21   3.   In furtherance of the conspiracy, and to accomplish its
22 object, defendants ALEXANDER and BOWSER, together with other
23 conspirators known and unknown to the Grand Jury, committed and
24 willfully caused others to commit the following overt acts, among
25 others, in the Central District of California and elsewhere:
26   Overt Act No. 1:  In or after June 2006 and before January
27 5, 2007, defendants ALEXANDER and BOWSER began discussions about
28 robbing the Bank.

2

1    <u>Overt Act No. 2</u>:  In or after June 2006 and before January

2    5, 2007, as part of the robbery plan, defendant BOWSER obtained

3    handcuffs, rope, duct tape, a 9mm semiautomatic handgun, and a

4    backpack.

5        <u>Overt Act No. 3</u>:  On or about January 2, 2007, defendant

6    ALEXANDER ordered $110,000 cash to be delivered to the Bank.

7        <u>Overt Act No. 4</u>:  On or about January 5, 2007, defendant

8    ALEXANDER was working as a bank teller to help facilitate the

9    robbery of the Bank.

10       <u>Overt Act No. 5</u>:  On or about January 5, 2007, defendant

11   BOWSER, armed with the handgun and wearing a cap, hood, and

12   bandana, forced his way into the Bank.

13       <u>Overt Act No. 6</u>:  On or about January 5, 2007, during the

14   course of the robbery, defendant BOWSER pointed the handgun at

15   various victim bank employees and customers.

16       <u>Overt Act No. 7</u>:  On or about January 5, 2007, defendant

17   BOWSER forced at gun point the bank employees and customers into

18   the women's restroom at the back of the Bank.

19       <u>Overt Act No. 8</u>:  On or about January 5, 2007, defendant

20   BOWSER at gun point searched the bank customers and employees

21   except defendant ALEXANDER.

22       <u>Overt Act No. 9</u>:  On or about January 5, 2007, defendant

23   BOWSER at gun point used the handcuffs, rope, and duct tape to

24   restrain the bank customers and employees except defendant

25   ALEXANDER and bank teller K.M.

26   / / /

27   / / /

28   / / /

3

1      Overt Act No. 10:  On or about January 5, 2007, defendant
2  BOWSER threatened the Bank's employees and customers with the
3  handgun in order to obtain money and gain access to the Bank's
4  vault and ATM canisters.
5      Overt Act No. 11:  On or about January 5, 2007, defendants
6  BOWSER and ALEXANDER obtained approximately $157,000 from the
7  Bank.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

COUNT TWO

2

[18 U.S.C. §§ 2113(a),(d),(e), 2]

3      On or about January 5, 2007, in Orange County, within the

4   Central District of California, defendants KARON DOMINIQUE BOWSER

5   and SHERYL ANNTOINETTE ALEXANDER, aiding and abetting each other,

6   by force and violence, and by intimidation, knowingly took from

7   the person and presence of another approximately $157,000

8   belonging to and in the care, custody, control, management, and

9   possession of Credit Union of Southern California, located at

10  2545 East Imperial Highway #A, Brea, California, a credit union

11  the deposits of which were then insured by the National Credit

12  Union Share Insurance Fund, operated by the National Credit Union

13  Administration.

14      In committing said offense, defendants BOWSER and ALEXANDER

15  assaulted and put in jeopardy the lives of victims B.V., A.V.,

16  B.W., K.M., and P.P., and others by using a handgun, a dangerous

17  weapon and device.

18      In committing said offense, defendants BOWSER and ALEXANDER

19  knowingly forced employees and customers of said bank to

20  accompany defendant BOWSER from the lobby and teller areas of the

21  bank to the women's bathroom in the back of the bank without the

22  employees' and customers' consent.

23

24

25

26

27

28

1                            COUNT THREE

2               [18 U.S.C. §§ 924(c)(1)(A)(ii), 2]

3      On or about January 5, 2007, in Orange County, within the

4  Central District of California, defendants KARON DOMINIQUE BOWSER

5  and SHERYL ANNTOINETTE ALEXANDER, aiding and abetting each other,

6  knowingly used and brandished a firearm during and in relation to

7  a crime of violence, namely, the January 5, 2007 robbery of the

8  Credit Union of Southern California, located at 2545 East

9  Imperial Highway #A, Brea, California, in violation of Title 18,

10  United States Code, Sections 2113(a),(d) and (e), as charged in

11  Count Two of this indictment.

12

13                        A TRUE BILL

14

15              _____/S/_____

16              Foreperson

17

18  ANDRÉ BIROTTE JR.
    United States Attorney
19

    CHRISTINE C. EWELL
20  Assistant United States Attorney
    Chief, Criminal Division
21

22

    DENNISE D. WILLETT
23  Assistant United States Attorney
    Chief, Santa Ana Branch Office
24

    TERRI K. FLYNN
25  Assistant United States Attorney
    Deputy Chief, Santa Ana Branch Office
26

    ANN LUOTTO WOLF
27  Assistant United States Attorney

28